Mr. Jacobson, are you ready? Good morning, and may it please the court. I'm Brian Jacobson, and together with my colleague Tom Watson, we represent Mel Kwan Thawney on appeal. We did not represent him below. This court should reverse Mr. Thawney's conviction because his sole offensive conviction was rendered unconstitutional by New York State Rifle and Pistol Association v. Bruin, which came down just nine days after the judgment was entered. The district court also, in our view, plainly erred in taking Mr. Thawney's plea over the telephone without making the requisite findings. First, Bruin rendered Section 922G1, the Felon in Possession Law, unconstitutional on its face. Under Bruin, when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct, and the government must then justify its regulation by demonstrating that it's consistent with the nation's historical tradition of firearm regulation. So why is the Supreme Court now hearing argument in United States against Rahimi if this is all obvious? I mean, the question of 922 and all of its subparts is an active issue around the country. Different courts of appeals are making different rulings. We've got another case pending that deals with whether that is constitutional as to nonviolent felons. Rahimi is about domestic abusers. Your client is arguably a violent prior felon. So why is it plain error for the court not to have recognized that this is unconstitutional under Bruin? A few responses, Your Honor. First of all, plain error, as you know, was assessed at the time of appellate consideration. It's not that the district court didn't recognize it, but a few additional points. Why should we recognize it? Why is it plain that Bruin renders all felon possession statutes for violent and nonviolent felons and anybody else who's not allowed to have a gun based on his dangerous behavior in the past or non-law-abiding behavior in the past? That's like plain under Bruin? Well, I guess first of all, the government doesn't argue plain error in its brief, and numerous courts, circuit courts around the country have said that the government loses the benefit of plain error review when it doesn't argue plain error in its brief. But assuming the court does apply the plain error standard, despite the government waiving it, I would say that this court has said, and for example, United States v. Brown, 352 F. 3rd. 654, that plain error review is considerably more flexible than it sounds like Your Honor is allowing, and that the court applies plain error review less rigidly when reviewing a potential constitutional error. And unlike Rahimi, where a domestic violence order necessarily entails a finding of dangerousness of an individual, the felon in possession law, an issue in this case and an issue in the Zerka case I think Your Honor is alluding to, it's very clear, looking at the history and tradition, as the government Wait, so you're saying that the felon in possession law doesn't require a finding of dangerousness, and that's why it's facially unconstitutional? The felon in possession law has no basis in the nation's historical tradition of firearms regulation Yeah, but I want to get at what your burden here is. So you're saying it's facially unconstitutional, which means that it has no constitutional applications at all, right? So is it a possible response to you to say, well, we think it at least applies constitutionally to violent felons rather than nonviolent felons, and so therefore it is facially constitutional? Is that an acceptable argument? I think in the Johnson case from the Supreme Court, which we cite in footnote 4 of our reply brief, it makes clear we don't have to demonstrate that every conceivable application of the statute is unconstitutional. The Bruin case itself sets out what the appropriate standard is by which to review 922 G1. The standard that applies here Well, I understand the standard is there needs to be analogs in our nation's history and tradition, or in our history. But if we think that there are analogs that show that the government could permissibly disarm somebody who is dangerous, a dangerous felon, that would mean that there are some constitutional applications of the statute, wouldn't it? I don't think it would, Your Honor. Bruin distinguishes between situations where there's a regulation that addresses a problem that existed at the time of the founding. No, I understand. Your point is that there just weren't any laws that disarmed felons, even though we had felons earlier in our history, right? That's your position. So I understand that that's an argument. But if we were to say that actually at least some classes of felons or some people who committed violent crimes or were dangerous to the public could permissibly be disarmed, that would mean that the law is not facially unconstitutional, wouldn't it? Not under Bruin, Your Honor. Bruin requires a distinctly similar regulation in the founding era, and I don't think any of the regulations the government identifies here are distinctly similar in the way that Bruin articulates that. It is remotely similar to orders of protection against domestic abusers, let alone statutes that disarm domestic abusers who have been determined to warrant an order of protection, right? Well, indeed, that view is consistent with what the Fifth Circuit ruled in Rahimi. So don't you think we ought to at least wait and see what they've got to say about a different subsection of this statute before we go charging off to decide this issue? Well, I think the issue here and the issue in Rahimi, they are materially different because the historical inquiry in Rahimi is looking at whether there are distinctly similar regulations disarming people who have been found to be dangerous and dangerous to one particular or multiple particular people. The issue here, the statute here, believe me, I have thoroughly had to deal with this because we've got another thing pending, which also is going to address the question of what it means to be facially unconstitutional in the Second Amendment context. And we're going to have to wait for that one to come down because that has precedence over this case. But the historical analogs are things like disarming Indians and Catholics. They're not things like disarming domestic abusers. I'm not sure there was even a concept of domestic abuse that is comparable to what is going on in Rahimi at the time of the founding. So I think we're going to hear a little more from the Supreme Court about what it means to look for analogs. And we're going to hear a lot more, I take it, about the various dicta in Bruin, including dicta that say people who are – this is all about the rights of people who are law-abiding. I take it you're going to say that's dictum. I agree. But also all this stuff about the history is pretty unnecessary in looking at the New York Sullivan law, which is not comparable to anything that other states were doing at any time in history. So we're going to need some further guidance, I suspect, from the Supreme Court. Your Honor, I certainly agree that Rahimi could well provide further guidance that supplements what Bruin says. I think applying Bruin on its plain terms, 922G1, is unconstitutional. What I would suggest as to Your Honor's point about waiting until Rahimi comes down, Mr. Thoney has been in custody for some time now. He had a sentence of 51 months, and he's scheduled to be released in August of 2024. And so to the extent this case does present a substantial issue, which if resolved in Mr. Thoney's favor would result in his conviction being thrown out, I would suggest that he should be granted bail pending appeal rather than awaiting a decision that if it comes in June will be – and then for this court to consider it likely will be after he has already been released. Can I ask a – so I get that – about the distinction between facial and as applied challenges. So you're only bringing the facial challenge, but the Supreme Court has told us that that distinction between facial and as applied goes to the relief that's awarded rather than the claim. And so does that mean if we think that it's unconstitutional and as applied, can we still decide that here? Or you're just saying we shouldn't consider that at all? You're hanging all your – you're hanging your hat on the – it being facially unconstitutional. Your Honor, I think that the difference between facial and as applied unconstitutionality is hard to square with the analysis that Bruin says should be applied to firearms regulations in particular, where it says that if the challenge regulation is such that it's not rooted in the nation's historical tradition and gets thrown out, it doesn't say anywhere in Bruin that you have to look at whether as applied to the particular individual against whom the government is seeking to apply that regulation. I mean I guess I understand what you're saying, but if we think that the history indicates that there's a class of people who could be disarmed consistent with historical analogs and the statute that prohibits felon in possession applies to some of them and some people outside that category, wouldn't we have to decide whether your client is within the category or outside it? I think that that gets dangerously close to a form of legislating. It's very difficult to distinguish between people who are dangerous because they pose a risk of violence or dangerous because they pose a risk of violating the law and then looking to see whether some subclass in one of those groups was – So if we apply this to people who legitimately can be deprived of firearms consistent with our history of firearms regulation, we still should find the law unconstitutional because it's overbroad? Correct, Your Honor. And I think – So we're applying the overbreadth doctrine in the Second Amendment context. Do you think that's what Bruin tells us to do? Yes, Your Honor. What Johnson v. United States says is that Supreme Court holdings, and I'll quote, squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp. Well, this isn't vague. I think to the extent it applies to one category and not another based on something other than what's expressed in the text of the statute, it is a form of vagueness. And when Rahimi confronted this exact question, Rahimi said that – rejected the government's assertion that Rahimi had to establish some set of – no set of circumstances would warrant relief and said that Bruin itself is what instructs how to proceed. And so I think in this context – That's what the Fifth Circuit said. That is what the Fifth Circuit said, but it's consistent – And that's what's on appeal to the Supreme Court at this moment. The decision is on appeal. It's not clear whether that aspect will ultimately carry the day. But I would say consistent with Johnson and consistent with Bruin itself, which is the law that binds at least today, the approach is to strike down 922G1 as unconstitutional. Can I ask about the appellate waiver? So your client signed an appellate waiver, and we've said pretty explicitly that the failure to anticipate a change in the law is not a reason for invalidating an appellate waiver. So why doesn't that just apply here? I think the context in which the Court has said that is generally related to sentencing appeals as opposed to appeals where the appeal is that the act itself that was prescribed is not criminal. And in this Court's own recent decision in Cook from just a few weeks ago, this Court explicitly distinguished appeals where the appeal is that – You mean Lodge and S. probably from a few weeks ago. I'm sorry? You mean Lodge and S. from a few weeks ago? I think I mean Cook v. United States, which is 84F4118 in footnote 4. And it's a case that the government wrote a 28J letter on and that we responded to. And there in a footnote, Judge Sullivan's opinion says that that case didn't require you to decide whether a waiver would be unenforceable in the event of a complete miscarriage of justice because unlike the petitioner in Davis who argued that his conviction was based on an act the law did not make criminal, the defendants there in Cook admitted to engaging in conduct that did violate a host of criminal statutes if not the one that had subsequently been invalidated. So I would say that the appeal waiver – The difference between this case and Cook is that Cook was – even though he wasn't permissively found guilty of the 924C charge that he pleaded guilty to because he committed other offenses. And your client hasn't committed other offenses. Your Honor, yes. In that footnote, what Judge Sullivan explains is that the parties easily could have negotiated a plea agreement to a different offense based on the admitted conduct. Here, the only conduct is possessing a firearm while under a felony conviction. There's not some other law that would have been pled to if not the one that should be struck down as unconstitutional. And so the appellate waiver issue is a bit of a red herring. If this Court agrees that 922G1 is constitutional, then the conviction stands. If it is unconstitutional, then Mr. Thoney is in jail for an act the law does not make criminal, which is a miscarriage of justice and falls within that exception rather easily. I'll save my remaining time for rebuttal unless the panel has other questions. Thank you, Counsel. Thank you. We'll hear from the government. May it please the Court, my name is Sean Fearn from the U.S. Attorney's Office for the Eastern District of New York on behalf of the government. On the merits, this case substantially overlaps with a pending case that was first filed, briefed, and argued in this circuit in May in Zirka v. Garland. And the Court should reserve judgment in this case until that case is decided. Moreover, the Court should reserve judgment in this case on the Bruin Challenge until the Supreme Court provides more clarity on its Second Amendment jurisprudence as it will do in Rahimi. In June 2021, amidst the worst of the coronavirus crisis, Mel Kwan Thoney, who has prior dangerous felony convictions, pleaded guilty to being a felon in possession of a dangerous firearm. That conviction is valid for three reasons. First, Section 922G1 is still constitutional post-Bruin, as this Court's decision in Boggle is still controlling precedent. And even so, Mr. Thoney is a dangerous felon and not a law-abiding responsible citizen, so Section 922G1 is constitutional as applied to him. Second, Thoney waived his right to appeal in a plea agreement entered knowingly and voluntarily. On the waiver issue, if the Supreme Court or this Court in Zirka were to hold that 922G1 is unconstitutional, we would be happy to submit additional briefing on the implications of such a holding and may reconsider whether to waive the waiver as a matter of policy. Finally, the District Court did not commit plain error in its CARES Act findings, and Thoney waived his right to challenge the remote proceeding. I would say that Zirka overlaps with Thoney because both cases involve, one, Congress' constitutional authority to dispossess felons of firearms, two, the validity of Boggle post-Bruin, and three, whether this Court will adopt a categorical approach to felon dispossession or a case-by-case analysis as the Third Circuit did in Range. Rahimi also overlaps with this case because both cases involve, one, Congress' authority to prohibit categories of persons from possessing guns, two, the scope of the Supreme Court's definition of law-abiding responsible citizens, and three, how to apply Bruin's historical test. So on this question about whether it's a categorical approach or it's looking at the conduct, is your view that Mr. Thoney is a violent felon if you look at his particular conduct but not if you apply a categorical approach? Mr. Thoney, in the PSR, Mr. Thoney has prior convictions for conspiracy to commit murder, armed robbery, criminal possession of a weapon. I think there is no doubt that he is a dangerous felon. But were those mentioned in the indictment for possession, like wasn't the previous conviction the one about attempted illegal unlawful possession of a weapon? I don't think the indictment mentions a specific felony. Okay. But what he allocated to was to a prior possession of a weapon offense. That's correct. I mean, on the other hand, doesn't that somewhat undermine Mr. Jacobs' position on the Cook point and the Cook footnote? Because here, if the parties had been aware of these arguments at the time, there could have been an agreement or a specification that the government was relying on a prior violent felony and not on the mere possession of a firearm. I think it's unclear whether or not mere possession of a firearm was a violent felony. The government would argue that it is. Right. But they're saying, you know, we all got rights to carry guns pretty much wherever, whenever. So that, and the law that he violated is the precise, the law that he's violated before that he allocated to as the predicate for being a felon in possession is precisely the law that was found unconstitutional in Bruin, right? It's that he possessed a firearm in New York State without a license to carry it. I think that prior conviction is still valid. Mr. Thonney has made no challenge to his underlying state conviction. Yeah, but if that's a, but the question of whether that's a violent felony or not, I think has a hard road to hoe in light of Bruin, because that felony, far from being an act of violence, is an act of doing what the Constitution gave him a right to do. I don't think the Constitution gave him a right to criminally possess a weapon without, I'm not entirely clear what those specific facts were at this point. Well, we don't know exactly, but all that is required under New York law for possession of a firearm conviction is that you don't have a license, and the Supreme Court invalidated that requirement. So it's a little hard, but one way or the other, the point is, even if he's right that that is a nonviolent felony, there are violent felonies in the background. That's correct. And when you're negotiating a plea in this situation, the fact that he negotiated to allocute to only one thing that is problematic seems to be covered precisely by the Cook precedent, not by the footnote. That's correct, Your Honor. So can I ask about the Bruin application? So you have all of these earlier examples of disarming Catholics and Indians and so on, but there were felonies earlier in our nation's history, and there was no statute saying that felons could not possess a weapon. So why doesn't that resolve the case? Well, at the founding, the punishment for a felony was death. I think it would make sense to further, in addition to death, dispossess a felon of his right to carry guns. So I think the analysis that one would presume is that if death were sufficient or a good enough consequence for a felony— So why don't we stop executing all felons, and do we disarm them at that point? In early America during the founding, for felonies for which the death penalty did not apply, there was disarmament. So the first Congress made a number of felonies—I'm sorry. In Virginia in 1624, Virginia punished a person for base and appropriate speech by ordering him disarmed and declaring him ineligible to exercise any privilege or freedom in the colony. In 1775, Connecticut enacted a statute providing that a person who was convicted of libeling or defaming certain colonial resolutions shall be disarmed and not allowed to have or keep arms. So I think there were, for certain felonies, examples in which the early colonies dispossessed individuals of their right to carry guns. One of the things that is a significant issue at the Bruin is—and which I think the Court leaves pretty unclear—is how close the analogs have to be. If there was a tradition of disarming people who are dangerous, then does it matter that then they considered some people dangerous, that today we would think it totally unconstitutional to classify them as dangerous on the basis of, for example, their religious beliefs? But now there are other people who are considered dangerous for other reasons. How precise an analog do you need to have? Is it only people who committed libels who can be disarmed because that's your precise analog? Is that good enough because it's only Virginia? But, of course, Virginia was a pretty big and important state at the time, more so than today given its proportion to the population. Is that something that we consider? We've got a lot of historical work to do if we're going to consider this claim rather than just saying Bruin settles this. Well, I think precisely for that point, this Court should hold judgment in this case until the Supreme Court provides further guidance on what the Bruin historical test means. The problem is this is exactly what happened with the categorical approach in 924C cases. We're going to be, for years, deciding these cases one way or another and then seeing the Supreme Court give us new guidance and then having those cases come back to us. The Davis case, which was an issue in Cook, has been in litigation for, I don't know, 10 years? All on these issues as they bounce back and forth to the Supreme Court. So, you know, we have a mess. We can try to deal with it in this case. We can try to deal with this case. We can try to deal with Nazirka. We'll try to figure it out. I mean, I think for the reasons that you've specified, I think a dangerous versus non-dangerous felony approach to this question is impractical and unworkable. I think that's why Congress, in its capacity, decided to categorize all dispossessed felons. That's a problem because if it turns out that non-violent felons are not able to be disarmed, then we've got, you're telling me that we can't draw that distinction, which isn't very helpful to your case. Congress has already made a decision on which non-violent felonies or which categories of felonies 922G1 does not apply to. It carves out antitrust violations. It carves out restraint of business practices. I think Congress, in its judgment, has decided which, who should be dispossessed and who should not be dispossessed. Okay. Thank you, counsel. Mr. Jacobs, you have reserved two minutes for the buck. Thank you, Your Honor. Just a few brief points. With respect to Judge Lynch's colloquy about how perhaps the plea could stand under Cook because there was dangerousness in the background, I would say that he was certainly not advised during his plea, Mr. Thonney, that dangerousness was an element. So in the event that 922G1 were upheld with an additional element of dangerousness, there was no advice given to him that this is an element. There was no elocution on it. I think it would fall within the Baldi decision from this court where a failure to advise on an element that subsequent law made clear was required is a reason to undo a plea on plain error review. And so I don't think that approach is workable here. And I, of course, agree with the government that a dangerousness approach here is unworkable. And, indeed, they do not argue it in their briefs. On the Bogle decision, regardless of whether it's plain that Bruin make 922G1 unconstitutional, I think it is clear that Bogle is not good law. Bogle relied on dicta that has been displaced, that's not in the opinion for the court. It did not—Bogle did not put the burden on the government, as Bruin requires, to demonstrate history and tradition. Bogle itself did not conduct a historical analysis. I don't think that that opinion could be treated as good law regardless of the panel's ultimate resolution of the 922G1 issue. And just finally, on the question of the appeal waiver, I think one reason for the dearth of case law in the circuit for the proposition that an appeal of a conviction where the basis is deemed invalid can survive a waiver is that the government does not often pursue that. And as my adversary suggested in the event that it is clear that 922G1 is unconstitutional, there was an offer of supplemental briefing. I wouldn't expect the government to seek to enforce an appeal waiver where, indeed, the statute itself is struck down. I would expect that in that event, Mr. Thoney's conviction would be vacated. Unless the panel has other questions, we'll rest on our papers. Thank you. Thank you, counsel. Thank you both. We'll take the case under a vote.